UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                   :
MIKHAIL BERNSHTEYN and                             :
BEST CARE MEDICAL, L.L.C.,                          :
                                                   :
                              Plaintiffs,          :        04 Civ. 1774 (GEL)
                                                   :
        -against-                                  :        **OPINION AND ORDER**
                                                   :
YAN FELDMAN,                                        :
                                                   :
                              Defendant.           :
-------------------------------------------------------------x

Eric Wertheim and Val Mandel, Val Mandel, P.C.,
New York, New York, for Plaintiffs.

Robert Fierman, New York, New York, for
Defendant.


GERARD E. LYNCH, District Judge:

        Plaintiffs Mikhail Bernshteyn and Best Care Medical, L.L.C. ("Best Care") bring this

action against defendant Yan Feldman, asserting various claims relating to Feldman's alleged

failure to pay payroll taxes on behalf of Best Care during the time Bernshteyn and Feldman were

both involved in Best Care's business affairs.  On November 14, 2005, after the completion of

discovery, plaintiffs moved for summary judgment.  However, while plaintiffs' motion was sub

judice, the parties requested that the Court reserve decision to allow for supplemental briefing

regarding the Court's subject matter jurisdiction over plaintiffs' claims.  Supplemental briefing

was completed on June 14, 2006, and the matter is now ripe for decision.  For the reasons stated

below, this Court lacks subject matter jurisdiction over plaintiffs' claims, and the case will be

dismissed.

**BACKGROUND**

Unless otherwise indicated, the following facts are not in dispute.  In the spring of 2001, Feldman hired Bernshteyn, a licensed physician, to be the medical director for three medical clinics then managed by Feldman.  To facilitate the management of these clinics, Feldman and Bernshteyn formed Best Care, a professional medical corporation, with Bernshteyn as the sole shareholder.  As a physician, Bernshteyn handled all medical management responsibilities, while Feldman handled the non-medical aspects of the business.  Bernshteyn and Feldman opened a bank account for Best Care and shared check signing authority.  However, all bank statements were sent to Feldman's personal residence in New Jersey.

In the course of his management responsibilities, Feldman retained an accounting firm, Universal Accounting, to prepare Best Care's payroll checks and payroll tax returns.  Universal Accounting was once owned by Feldman, although it was sold to a third party prior to Bernshteyn's involvement with Best Care.

Plaintiffs allege that in May 2002, "unbeknownst to Bernshteyn or Best Care, Feldman inexplicably stopped paying payroll taxes, while continuing to pay compensation to employees." (Am. Compl. ¶ 11.)  Liability for Best Care's unpaid payroll taxes is at the heart of the present dispute.

**DISCUSSION**

Plaintiffs assert that this Court has subject matter jurisdiction over this action based on diversity of citizenship, 28 U.S.C. § 1332, and the existence of a federal question arising under an act of Congress relating to internal revenue, 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1340 (internal revenue).  Neither basis is ground for jurisdiction in this case.

I. <u>Federal Question Jurisdiction</u>

The Court does not have federal question jurisdiction.  Federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  To meet this standard, a right created by federal law must be an essential element of one of plaintiffs' causes of action. <u>Greenblatt v. Delta Plumbing & Heating Corp.</u>, 68 F.3d 561, 568 (2d Cir. 1995).  In the usual case, "[a] suit arises under the law that creates the cause of action."  <u>Am. Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260 (1916) (Holmes, J.).  However, a case may also "arise under" federal law if "the vindication of a right under state law necessarily turn[s] on some construction of federal law."  <u>Greenblatt</u>, 68 F.3d at 569.

Plaintiffs' claims do not arise under federal law.  Plaintiffs' amended complaint asserts seven causes of action – breach of contract, unjust enrichment, breach of fiduciary duty, malpractice, negligence, accounting, and contribution (Am. Compl. ¶¶ 14-31) – none of which is based on a federal statute.  Nor do plaintiffs' asserted state-law rights "necessarily turn[]" on the construction of federal law.  The only federal issue mentioned in plaintiffs' complaint is the allegation that plaintiffs incurred liability to the IRS due to Feldman's failure to pay payroll taxes.  (<u>Id</u>. ¶ 12.)  On the face of the complaint, there is no claim or dispute that would require this Court to make a determination of federal law, such as the amount of taxes due or plaintiffs' own liability to the IRS.  Rather, plaintiffs simply allege that the damages caused by their liability to the IRS are the fault of Feldman, and the existence of that fault turns completely on the state-law causes of action asserted in the complaint.  Accordingly, no federal question is presented on the face of the complaint, and the Court lacks federal question jurisdiction.

II.  Diversity Jurisdiction

Nor does the Court have diversity jurisdiction.  There is no dispute concerning the diversity of citizenship of the parties.  Plaintiffs are both citizens of New York, and Feldman is a citizen of New Jersey.  (Am. Compl. ¶¶ 1-3.)  However, plaintiffs' claims fail to satisfy the statute's $75,000 amount-in-controversy requirement, 28 U.S.C. § 1332(a), because it is a legal certainty that plaintiffs cannot recover $75,000 in this action.

A.  Legal Standards Governing the Amount-in-Controversy Requirement

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).  However, the burden on plaintiffs is light, because there exists a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999); see also Scherer v. The Equitable Life Assurance Society, 347 F.3d 394, 397 (2d Cir. 2003).

To overcome this presumption, a party seeking to defeat jurisdiction "must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold."  Scherer, 347 F.3d at 397, quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).  "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings."  Tongkook, 14 F.3d at 785.

While the stringent "legal certainty" test often results in the conclusion that jurisdiction exists, see Charles Alan Wright et al., Federal Practice & Procedure § 3702 (3d ed. 2006), the diversity statute's amount-in-controversy requirement is not completely without teeth.  A

plaintiff's mere mention of an amount greater than $75,000 is not a magic talisman that wards

off a district court's inquiry into the actual amount at issue.  When the asserted amount in

controversy is based on a cause of action created by state law, "the federal courts must, of

course, look to state law to determine the nature and extent of the right to be enforced."  <u>Horton</u>

<u>v. Liberty Mut. Ins. Co.</u>, 367 U.S. 348, 352-53 (1961).  Accordingly, if a plaintiff asserts a state-

law cause of action seeking damages greater than the jurisdictional minimum, but the state law

upon which the plaintiff's claims are based does not permit, as a matter of legal certainty,

recovery of the amount claimed by the plaintiff, then § 1332's amount-in-controversy

requirement is not satisfied and the district court lacks jurisdiction over the action.

For example, in <u>Kahn v. Hotel Ramada</u>, the plaintiff brought a claim against the

defendant hotel in connection with the hotel's loss of over $50,000 of the plaintiff's property.

799 F.2d 199, 200-01 (5th Cir. 1986).[1]  However, the state statute that created the plaintiff's

cause of action limited the plaintiff's recovery to $750.  <u>Id</u>. at 201-02.  Accordingly, the plaintiff

"could not recover more than $750" under the cause of action asserted in the complaint, and the

action was dismissed for lack of jurisdiction.  <u>Id</u>. at 203.

Similarly, in <u>Wiggins v. North American Equitable Life Assurance Co.</u>, the plaintiff's

complaint was dismissed for lack of jurisdiction despite the fact that plaintiff sought over

$100,000 in relief.  644 F.2d 1014 (4th Cir. 1981).  The plaintiff in <u>Wiggins</u> asserted claims for

compensatory and punitive damages under Maryland law.  However, the Fourth Circuit

determined that under the Maryland law governing the plaintiff's claim, the plaintiff could not

recover punitive damages "as a matter of 'legal certainty.'" <u>Id</u>. at 1017, <u>quoting</u> <u>St. Paul</u>, 303

---

[1] The amount-in-controversy requirement at the time the case was filed was $10,000.

U.S. at 289.  Therefore, the <u>Wiggins</u> Court was "ineluctably led to conclude that plaintiff could not recover punitive damages as she claimed and that therefore the . . . case involve[d] a controversy over only $9,000.  It follow[ed] that the district court never had jurisdiction . . . ." 644 F.2d at 1018.

Courts in this Circuit have reached the same conclusion in similar circumstances.  The district court in <u>Pollack v. Trustmark Ins. Co.</u> recognized that because the plaintiff there sought damages for an alleged breach of contract, "the amount in controversy depends on the amount recoverable under [New York] contract law."  367 F. Supp. 2d 293, 297 (E.D.N.Y. 2005).[2]  After determining that New York law only permitted recovery up to an amount that made the plaintiff "whole," and that the plaintiff only alleged that he was owed $55,000 at the time of suit, the <u>Pollack</u> Court concluded that the case should be remanded.  <u>Id</u>. at 298.[3]

---

[2] <u>Pollack</u> involved a case that had been removed to federal court.  The plaintiff sought a remand to state court, which the defendant opposed.  Because the defendant was the party asserting the Court's jurisdiction, the Court placed the burden on the defendant to "establish by a reasonable probability that the amount is over the threshold."  367 F. Supp. 2d at 296.  This test is admittedly different than the "legal certainty" test that must be applied to the present matter.  However, the <u>Pollack</u> Court's analysis remains instructive.

[3] A panel of our Court of Appeals has recently found that an asserted amount in controversy actually fell below § 1332's minimum based on the constraints of a state-law cause of action, albeit in an unpublished opinion.  <u>See</u> <u>Nwanze v. Time, Inc.</u>, 125 F. Appx. 346 (2d Cir. 2005).  The plaintiff in <u>Nwanze</u> claimed that defendant Time, Inc. defrauded him of two prizes he was allegedly owed, and sought $2,550,112 of actual damages, an amount that "would appear to satisfy the requirements of federal subject matter jurisdiction based on diversity of citizenship."  <u>Id</u>. at 347.  However, the Court determined that it was a legal certainty that the plaintiff could not recover the actual damages he sought, because New York law limits damages in fraud actions to out-of-pocket expenses.  <u>Id</u>. at 348.  Accordingly, while the plaintiff had claimed damages well above the jurisdictional requirement, the district court lacked jurisdiction because the plaintiff could not recover those damages under the state cause of action asserted.  While the Second Circuit proclaims that such summary opinions lack precedential value, <u>see</u> 2d Cir. R. § 0.23, this Court must seek enlightenment as to the law where it can find it.  The analysis of a distinguished panel of appellate judges comprising Judges Newman, Leval, and

The determination of whether a plaintiff's allegations satisfy the amount-in-controversy requirement considers the amount as of the date the complaint is filed. Scherer, 347 F.3d at 397. "Once jurisdiction has attached, it cannot be ousted by subsequent events." Id. However, while a drop in the amount in controversy following the filing of the complaint does not deprive the Court of jurisdiction, the eventual discovery of a fact that establishes that the plaintiff could not meet the jurisdictional amount *at the time of filing* will defeat jurisdiction. Tongkook, 14 F.3d at 785.

In Tongkook, the plaintiff, in good faith, alleged damages of $117,621.05 at the filing of the complaint. Id. at 782. However, until it was revealed during discovery, both the plaintiff and the defendant failed to realize that $80,760.00 of that amount had already been paid by the defendant, bringing the actual amount in controversy down to $36,861.05. Id. at 782-83. The plaintiff argued that its good-faith assertion at the time it filed the complaint should not be defeated by the subsequent discovery of evidence that the amount sought was in fact overstated. However, the Court of Appeals rejected this argument, stating that the plaintiff's good faith was not the controlling factor when "from the outset, [plaintiff], to a legal certainty, could not recover the statutory jurisdictional amount." Id. at 785 (quotation marks omitted). Accordingly, the "'subsequent discovery of the true amount' in controversy, below the minimum statutory jurisdictional amount, require[s] dismissal for lack of subject-matter jurisdiction." Id. at 786, quoting Jones v. Knox Exploration Corp., 2 F.3d 181, 183 (6th Cir. 1993).

---

Cabranes is at least as persuasive as such commonly cited materials as the writings of law students in student-edited journals.

7

B.  <u>Application to Plaintiffs' Claims</u>

Plaintiffs seek compensatory damages from Feldman stemming from his alleged failure to pay payroll taxes on behalf of Best Care.  These damages are sought pursuant to various tort and contract claims under New York law.[4]  Therefore, New York law determines the extent of plaintiffs' right to recovery in this case.

Under New York law, compensatory damages are just that – compensatory.  A plaintiff may only recover damages for actual losses.  <u>See</u> <u>Wai Ming Ng v. Tow</u>, 260 A.D.2d 574, 575 (N.Y. App. Div. 2d Dep't 1999) ("an award of damages should place the plaintiff in the same position as he or she would have been in if the contract had not been breached"); 36 N.Y. Jur. 2d Damages § 20 ("consequences which are contingent, speculative, or merely possible are not properly considered in ascertaining . . . damages").  Put another way, a plaintiff cannot recover damages that are "remote, contingent or speculative," <u>Steitz v. Gifford</u>, 280 N.Y. 15, 20 (1939); <u>see also</u> <u>Wai Ming Ng</u>, 260 A.D.2d at 575 ("damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable" (internal quotations and citations omitted)), or based on conjecture, <u>ESPN, Inc. v. Office of the Comm'r of Baseball</u>, 76 F. Supp. 2d 416, 418 (S.D.N.Y. 1999).  This is not to say that any uncertainty regarding damages defeats a plaintiff's claim under New York law.  Rather, only uncertainty with respect the *existence* of harm, not the *amount* of harm, is a bar to a plaintiff's recovery.  <u>ESPN</u>, 76 F. Supp. 2d at 418; <u>see also</u> N.Y. Jur. 2d Damages § 16.

---

[4] Both parties have proceeded on the assumption that New York law controls plaintiffs' state law claims.  The Court will similarly assume, without deciding, that the parties' assumption is correct.

The complaint contains little information regarding the relief plaintiffs seek, and does not request a specific amount of damages.  Instead, for each cause of action seeking compensatory damages, plaintiffs simply request "compensatory damages in an amount to be determined by the Court."  (Am. Compl. pp. 7-8.)  The only reference to any harm suffered by plaintiffs is found in plaintiffs' factual allegations, which claim that Feldman's actions (or inaction) caused (1) an "incurred liability" to the IRS "in the amount of approximately $200,000 with potential penalties of an additional $200,000 plus interest" (Am. Compl. ¶ 12), and (2) "potential liability to the State of New York in the amount of approximately $50,000 with potential penalties of an additional $25,000 plus interest" (id. ¶ 13).

Plaintiffs fail to allege a compensable injury under New York law, and therefore they have failed to meet the required amount in controversy for diversity jurisdiction.  Plaintiffs claim four separate sources of damages – liability to the IRS, potential penalties to the IRS, potential liability to New York, and potential penalties to New York.  Three of these amounts – the potential IRS penalties and the potential New York liability and penalties – are admittedly conjectural and speculative.  Plaintiffs do not allege that any of these three potentialities have come to pass, and accordingly it is a legal certainty that those three dollar amounts cannot form the basis for an award of damages under New York law.

Similarly, plaintiffs' alleged liability to the IRS is not compensable under New York law. The complaint conspicuously omits any allegation that plaintiffs have actually *paid* the IRS in satisfaction of this liability.  In other words, plaintiffs do not allege that they have parted with any money, and therefore no damages are necessary to make them whole.  In the absence of an allegation that they have suffered any actual financial harm, plaintiffs have failed to allege that

they suffered any compensable injury traceable to Feldman.

This reading of plaintiffs' complaint is not merely literal or formalistic. Information disclosed during discovery confirms that plaintiffs' ambiguous wording, couched in possibility and speculation, was carefully intended, and reflected reality at the time it was drafted, for plaintiffs have not in fact paid anything close to $75,000 in taxes or penalties. If the allegations in plaintiffs' complaint left any doubt regarding the legal certainty that plaintiffs could not recover $75,000 from Feldman, subsequent revelations have "amplif[ied] the meaning of the complaint allegations." Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982).

The parties' summary judgment submissions reveal that Bernshteyn has paid only "$20,000 to New York Sate on account of unpaid payroll taxes" (Pl. R. 56.1 Stmt. ¶ 14), and that plaintiffs owe exactly $138,127.09 to the IRS (id. ¶ 15). Plaintiffs admit that the IRS has chosen not to seek payment of that amount from Bernshteyn (Wertheim Aff. Ex. D), but claim that Best Care "remains liable for unpaid payroll taxes" (Pl. Mem. Summ. J. 4). However, plaintiffs further admit that the IRS has not commenced any action to collect the money owed by Best Care. (Pl. Supplemental Mem. 2.)[5] Accordingly, what was clear on the face of plaintiffs' complaint is confirmed by subsequent evidence: plaintiffs' total compensable losses amount to

---

[5] It is unclear to what extent Best Care would be able to recover any of this amount from Feldman. Presumably, to the extent the amount owed reflects taxes that should have been but were not paid to the IRS, Best Care is and always has been liable to the IRS for that amount. Plaintiffs do not allege that Feldman appropriated for his own use money that Best Care should have paid to the federal government; they merely allege that he neglected to pay the taxes from Best Care's corporate funds. If that money was then expended for other corporate purposes, it represented a windfall for Best Care, and the only harm suffered would be the result of any interest or penalties assessed. However, the record is unclear regarding the composition of the money owed or the existence of any surplus funds from unpaid taxes, and the Court will not speculate about Best Care's ability to recover those amounts in a hypothetical action where jurisdiction existed.

$20,000, the amount paid by Bernshteyn to the State of New York.  New York law does not allow plaintiffs to recover from Feldman amounts of money that they admittedly have not lost, and may never lose, based simply on the possibility that the IRS or New York may some day seek to collect.[6]

Under New York law, therefore, it is a legal certainty that the most plaintiffs can recover under the tort and contract claims asserted in the complaint is $20,000, the amount paid by Bernshteyn to the State of New York.  Twenty thousand dollars is below § 1332's jurisdictional amount-in-controversy requirement.  Accordingly, the Court does not have diversity jurisdiction over the action.

C.  Plaintiffs' Claims for Punitive Damages and Attorneys' Fees

In addition to seeking compensatory damages, plaintiffs seek punitive damages and attorneys' fees in connection with some of their causes of action.  However, neither potential source of recovery is sufficient to satisfy the jurisdictional minimum.

A good faith claim for punitive damages can be considered in determining the relevant amount in controversy.  A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991).  However, claims for punitive damages are reviewed with greater scrutiny than claims for actual damages when punitive damages serve to satisfy the jurisdictional requirement.  Zahn v. Int'l Paper Co., 469 F.2d 1033, 1034 n.1 (2d Cir. 1972).  Here, plaintiffs merely request punitive damages – they provide no amount of punitive damages sought, nor any justification for the

---

[6] New York's rule in this regard accords perfectly with common sense.  If Bernshteyn or Best Care could recover from Feldman sums of money they have not yet paid to the federal or state tax authorities, plaintiffs would receive a windfall if the authorities never pursued their remedies against plaintiffs.

award of such damages.  Given the "special judicial scrutiny" accorded to "the use of punitive damages to satisfy the jurisdictional amount," Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *4 (S.D.N.Y. Apr. 7, 2006) (internal citations and quotations omitted), plaintiffs' failure to explain or justify their claim for punitive damages defeats any attempt to include those damages in the calculation of the amount in controversy.  See id. (refusing to include claimed punitive damages in amount-in-controversy calculation where plaintiff failed to support claim for damages in complaint, in briefing, or at argument).  Accordingly, plaintiffs' baseless request for an indeterminate amount of punitive damages cannot serve to raise the amount in controversy above the minimum statutory requirement.

Similarly, plaintiffs' claim for attorneys' fees does not bring the amount in controversy to $75,000.  Attorneys' fees can be considered as part of the amount in controversy only where the claimed fees are recoverable "as a matter of right," either under the state-law cause of action or under a contract between the parties.  See Givens v. W.T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972), vacated on other grounds by 409 U.S. 56 (1972); see also Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) ("Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.")  Here again, plaintiffs merely request an award of attorneys' fees without providing an amount sought or a justification for the award.  Accordingly, plaintiffs have failed to show that they are entitled to attorneys' fees as a matter of right.

III.  Plaintiffs' Motion for Summary Judgment

     The discussion above demonstrates that the Court lacks jurisdiction over this action, insofar as the action is determined by the allegations and causes of action asserted in plaintiffs' complaint.  However, in their summary judgment papers, plaintiffs appear to move for summary judgment on a new cause of action.   Completely ignoring (without explanation) the state-law causes of action asserted in the complaint, plaintiffs instead seek a summary declaratory judgment that "defendant Yan Feldman [is] liable for the unpaid state and federal payroll taxes of Best Care."  (Pl. Mem. 1.)  Feldman rightly interprets plaintiffs' claim as a "request for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201."  (Def. Mem. 6.)

     Plaintiffs' complaint, however, does not seek declaratory relief or mention the Declaratory Judgment Act ("DJA"), nor do plaintiffs seek leave to amend the complaint to add such a claim.  Accordingly, plaintiffs' complaint can be dismissed without regard to their attempt to advance a new claim in their summary judgment briefing.  However, in an abundance of caution, the Court will evaluate plaintiffs' newly advanced claim to determine whether that claim, if allowed, would provide a basis for jurisdiction over this action.  For the reasons given below, it would not.

     A.  Plaintiffs Do Not Present a Justiciable Controversy with Feldman

     Plaintiffs' request for declaratory relief is predicated entirely on 26 U.S.C. § 6672 and its New York counterpart, N.Y. Tax Law § 685.  Both statutes govern an individual's liability to the respective tax authorities for unpaid taxes owed by a corporation, and plaintiffs assert that under the statutes Feldman is accountable to the IRS and New York State for Best Care's tax liability.  However, Feldman's liability to the federal or state governments is a matter between Feldman

and those governments; it is not a justiciable dispute as between Feldman and plaintiffs.

It cannot be denied that plaintiffs and Feldman hold different views regarding the parties' respective tax liabilities.  However, the mere existence of a disagreement about a legal question does not create a justiciable issue proper for resolution by the federal courts.  Rather, "the question is whether [the plaintiff] is a proper party to request an adjudication of a particular issue."  Flast v. Cohen, 392 U.S. 83, 99-100 (1968).  To be a justiciable dispute, the issue must "be definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241-42 (1937).

Plaintiffs' request for a declaratory judgment involves Feldman's tax liabilities to federal and state tax authorities.  That issue is between Feldman and those authorities, not between Feldman and plaintiffs.  The statutes relied upon by plaintiffs do not create any liability on the part of Feldman in favor of plaintiffs, nor do they purport to create a cause of action in plaintiffs to compel Feldman to pay any sum he might owe to either government.  The statutes merely create a right on the part of the respective governments to collect unpaid taxes from certain individuals.  Accordingly, plaintiffs are not "proper part[ies] to request an adjudication" of liability under those statutes.  Flast, 392 U.S. at 99.

The fact that Feldman's tax liability may, in some way, affect what plaintiffs wind up paying on Best Care's tax liability does not make plaintiffs' newly-asserted claims justiciable.  Feldman's tax liability may affect plaintiffs' tax liability, in that if some or all of the overdue payroll taxes are collected from Feldamn the tax authorities may not seek those sums from plaintiffs.  The statutes in question, however, do not compel the tax authorities to look to

14

Feldman, even if he is liable under their terms.  The tax authorities may seek recovery of what is

owed from Best Care, or from Bernshteyn, if he is liable under the statutes, even if Feldman is

also liable.  If plaintiffs wish to challenge their own liability to the IRS or New York State, they

must do so in an action against those parties, not against Feldman; if plaintiffs believe that the

tax authorities legally may and in their discretion should seek to recover from Feldman instead

of from them, they are free to suggest that plan to the relevant government officials.  But they

cannot compel those officials to seek recovery from Feldman, even if he is in principle liable.

As far as plaintiffs are concerned, Feldman's liability to the federal or state authorities is a purely

hypothetical question.[7]

Accordingly, plaintiffs' request for a declaratory judgment would not raise a justiciable

dispute capable of resolution by this Court.[8]

---

[7]  Plaintiffs' request for a declaratory judgment can be framed in one of two ways, each of which is nonjusticiable.  If plaintiffs seek a declaratory judgment regarding Feldman's liability to the tax authorities, plaintiffs are not proper parties to present that issue in this Court. Feldman's tax liability under the statutes relied upon by plaintiffs is to be decided between Feldman and the tax authorities, not between plaintiffs and Feldman.  Alternatively, if plaintiffs seek a declaratory judgment regarding their own tax liability, that issue cannot be raised in this action either.  Plaintiffs' tax liability is an issue between plaintiffs and the federal and state tax authorities, neither of which has been joined in this action.  If plaintiffs wish to challenge their own tax liability, they must bring an action against the appropriate parties.  See Fed. R. Civ. P. 19; see also Donovan v. Campion, 85 F. 71, 72 (8th Cir. 1898) ("Every indispensable party must be brought into court, or the suit will be dismissed.").

[8]  It should be noted that plaintiffs do not seek, either in their complaint or in their summary judgment motion, a declaratory judgment regarding Feldman's liability *to them* under the *state-law* causes of action asserted in the complaint.  As formulated in the summary judgment motion, plaintiffs' request for declaratory judgment in connection with their tax liability is predicated exclusively on 26 U.S.C. § 6672 and N.Y. Tax Law § 685.  (Pl. Mem. 5-8.) The Court expresses no opinion regarding its jurisdiction to adjudicate an action seeking a declaration of Feldman's state-law liability to plaintiffs for plaintiffs' tax liability to the federal or state governments, as plaintiffs have never sought such relief.

B.  Plaintiffs Cannot Adjudicate Tax Liabilities Under the DJA

Even if plaintiffs asserted their claims for declaratory relief against the proper parties, the Court would still be unable to grant the relief they seek.  The DJA does not permit taxpayers to adjudicate their federal tax liability in this Court, and the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA") applies that same bar with respect to plaintiffs' state tax liabilities.

1.  Plaintiffs' Federal Tax Claim

Plaintiffs seek a declaratory judgment that Feldman is liable for Best Care's unpaid federal payroll tax because Feldman is a responsible person under 26 U.S.C. § 6672(a). Moreover, plaintiffs assert that "Feldman is the *[o]nly* [i]ndividual [l]iable for Best Care's [u]npaid [t]axes."  (Pl. Reply 3; emphasis added.)  The relief plaintiffs seek would require this Court to determine the liability of either Bernshteyn or Feldman or both with respect to the IRS, a determination that is not permitted under the DJA.

The DJA explicitly exempts claims "with respect to Federal taxes" from its general creation of a cause of action.  28 U.S.C. § 2201.  "Every court which has considered the question has ruled that suits to restrain the collection of assessments under § 6672 . . . are prohibited." Botta v. Scanlon, 314 F.2d 392, 393 (2d Cir. 1963).  Plaintiffs recognize this prohibition, but argue that their action does not seek to restrain the collection of assessments by the IRS.  Rather, they assert that they seek to do just the opposite – obtain a declaration that the IRS *can* assess Best Care's taxes against Feldman.  (Pl. Supplemental Resp. 3.)

This argument fails for two reasons.  First, plaintiffs seek a declaration that Feldman is the "[o]nly" individual liable for Best Care's taxes.  (Pl. Reply. 3.)  Such a declaration would effectively restrain the IRS's ability to assess taxes against individuals other than Feldman, such

16

as Bernshteyn.  Second, while a determination in plaintiffs' favor that Feldman *is* a responsible

person would not frustrate the IRS's ability to assess taxes against Feldman, the applicability of

the DJA's prohibition against resolving federal tax matters is not dependant upon which side is

ultimately victorious.  A determination by the Court that Feldman *is not* a responsible person

under 26 U.S.C. § 6672 would certainly frustrate the collection of taxes by the IRS, and therefore

the matter is beyond the relief allowed under the DJA.  The statute does not state that it exempts

matters involving federal taxes, unless the Court resolves the matter in favor of the IRS.

 The Court of Appeals's decision in Bullock v. Latham, 306 F.2d 45 (2d Cir. 1962), does

not compel a contrary conclusion.  Bullock involved two natural persons and a corporation, each

of whom owed money to the IRS.  Id. at 45-46.  In connection with the individuals' tax liability,

the IRS seized real and personal property belonging to the individuals.  Plaintiffs argued that

some of the property that was credited to the corporation's tax liability should have been credited

to their liability, because the property at issue belonged to them.  Defendant, the Commissioner

of the IRS, argued that the Court could not hear the claim because of the DJA's exemption for

claims involving federal taxes.  The Court rejected this argument, concluding that the DJA's

exclusion was not so broad as to apply to any claim that involved federal taxes in any way.  The

Court concluded that the DJA permitted plaintiffs' claim, because the "only real question is

whether [a plaintiff] or [the corporation] owned the machinery and fixtures [at issue]."  Id. at 46.

Notably, plaintiffs did not seek a declaration regarding any party's liability to the IRS.  Rather,

each party's liability was conceded.  The only question for the court was who owned certain

seized property (and thus whose liability should have been offset by the seizure).

In the present matter, plaintiffs assert that it "is certainly no concern of the IRS'[s] that plaintiffs seek compensation from defendant for tax liabilities that arose as a result of defendant's malfeasance or misfeasance." (Pl. Supplemental Resp. 3.) That statement is correct with respect to those state-law causes of action that plaintiffs actually asserted in the complaint. However, the declaratory judgment plaintiffs seek in their summary judgment papers does not concern the relationship between plaintiffs and Feldman. Rather, plaintiffs seek a declaration – based on 26 U.S.C. § 6672, which governs the liability between Feldman *and the IRS* – that Feldman, and not Bernshteyn, is the only individual to whom the IRS can look for Best Care's unpaid payroll taxes. The DJA does not vest the Court with the power to address that liability in this action.

Accordingly, the DJA would not provide plaintiffs with a cause of action for their claim regarding Feldman's liability to the IRS under § 6672.

### 2. Plaintiffs' State Tax Claim

The DJA's exemption discussed above applies only to federal taxes, and therefore the above conclusion with respect to the DJA would not bar plaintiffs' request for a declaratory judgment with respect to Feldman's state tax liability. However, irrespective of the DJA, the TIA deprives the Court of jurisdiction over plaintiffs' request.

"[T]he [TIA] prohibits a federal district court, in most circumstances, from issuing an injunction enjoining the collection of state taxes." Grace Brethren Church v. United States, 457 U.S. 393, 408 (1982).[9] Here, plaintiffs do not seek to enjoin the collection of state taxes, but

---

[9] The TIA's bar does not apply if the state does not provide in appropriate remedy in state court. Hattem v. Schwarzenegger, 449 F.3d 423, 427 (2d Cir. 2006). Plaintiffs do not allege that New York State does not provide them with an appropriate forum to dispute their tax liability.

seek a declaratory judgment regarding Feldman's tax liability.  However, because the purpose of the TIA is to "divest[] the federal courts of jurisdiction to interfere with state tax administration," id. at 410 n.22, the TIA "prohibits declaratory as well as injunctive relief," id. at 411.  However, unlike the DJA's exemption for federal taxes, which simply removes federal tax matters from the DJA's creation of a cause of action, the TIA's prohibition entirely deprives this Court of jurisdiction over state tax matters.  See id. at 408.  Therefore, the above discussion regarding this Court's inability to grant the relief plaintiffs seek with respect to federal tax liability applies a fortiori to plaintiffs' claims with respect to state tax liability.

Accordingly, the Court lacks jurisdiction over plaintiffs' request for declaratory relief regarding Feldman's state tax liability.

## CONCLUSION

Because the Court does not have jurisdiction over this action, defendant's motion to dismiss is granted and the complaint is dismissed.  The Clerk of the Court is respectfully directed to close plaintiffs' and defendant's motions (Doc. ## 23, 43) for purposes of all internal reports, and to close the case.

SO ORDERED.

Dated: New York, New York
       August 29, 2006

GERARD E. LYNCH
United States District Judge

19